```
                  UNITED STATES DISTRICT COURT
                   MIDDLE DISTRICT OF FLORIDA
                      FORT MYERS DIVISION
```

RODERICK D. LEE,

                Plaintiff,

vs.                           Case No.  2:06-cv-541-FtM-29SPC

TIMOTHY J. BUDZ; ROBERT BUTTERWORTH;
LIBERTY BEHAVIORAL HEALTH
CORPORATION; DR. JACQUES LAMOUR and
BARBARA J. PEDERSEN, R.N.,

                Defendants.
_____

## OPINION AND ORDER

This matter comes before the Court upon review of Defendant Liberty Healthcare Corporation's Motion to Dismiss for Failure to State a Claim Upon Which Relief May be Granted, filed May 24, 2007 (Doc. #46, "Liberty Motion"), and Defendant Butterworth's Motion to Dismiss or in the Alternative for Summary Judgment, filed May 31, 2007 (Doc. #48, "Butterworth Motion"). *Pro se* Plaintiff filed a "Motion to Strike and Rebuttal to Defendant Liberty's Motion" on June 13, 2007 (Doc. #49) and "Motion to Substitute Party and Motion to Strike Defendant Butterworth's Motion" on June 15, 2007 (Doc. #52), which the Court construed as Plaintiff's Responses to the respective Motions (Doc. #69). This matter is now ripe for review.

**I.**

Plaintiff, who is involuntarily civilly confined at the Florida Civil Commitment Center pursuant to Fla. Stat. 394.910, et. seq. ("Jimmy Ryce Act"), initiated this action by filing a

complaint alleging violations of his civil rights on October 10, 2006 (Doc. #1, Complaint). On November 15, 2006, the Court entered an Order dismissing the Complaint without prejudice, and permitting Plaintiff an opportunity to file an amended complaint (Doc. #7). Plaintiff filed an Amended Complaint on December 1, 2006 (Doc. #8) and named Timothy J. Budz, the Administrator of the Florida Civil Commitment Center ("FCCC"), and Luci Hadi, the former Secretary of the Florida Department of Children and Families ("DCF"), as Defendants. After Defendants Budz and Hadi filed their respective motions to dismiss Plaintiff's Amended Complaint, see Docs. ##19-20, the Court granted Plaintiff leave to file a second amended complaint (Doc. #37). On May 9, 2007, Plaintiff filed a Second Amended Complaint naming Budz, Robert Butterworth, the current Secretary of DCF, Liberty Healthcare Corporation, the previous operator of the FCCC, Dr. Jacques Lamour, a physician at he FCCC, and Barbara J. Pedersen, R.N., a nurse at the FCCC, as Defendants (Doc. #42). Plaintiff sues each named Defendant, except Liberty, in both their individual and official capacities. See Second Amended Complaint, at 1. Defendants Budz, Lamour and Pedersen have each filed their respective Answers and Affirmative Defenses in response to Plaintiff's Second Amended Complaint. See Doc. #44 filed May 14, 2007, Doc. #58 filed July 10, 2007, and Doc. #83, filed November 1, 2007.

The Second Amended Complaint alleges Eighth and Fourteenth Amendment violations stemming from the Defendants' deliberate indifference to Plaintiff's serious illness. Second Amended Complaint at 7.[1] Plaintiff also claims violations of Florida's tort law for medical malpractice and negligence. Id. Further, it appears that Plaintiff is attempting to assert a retaliation claim against Dr. Lamour in connection with his decision to prescribe a psychotropic drug to Plaintiff after learning of the lawsuit. Id. As relief, Plaintiff seeks a declaratory judgment and "what additional relief he is due as far a monetary damages for his psychological and physical suffering." Id. at 11.

According to the factual allegations set forth in the Second Amended Complaint, Plaintiff first began complaining about abdominal swelling in May 2001 to "the FCCC Medical Department." Id. at 8. In particular, Plaintiff claims that he was experiencing "massive swelling of the abdominal area, as well as continual pain and discomfort." Id. At this time, Doctors "Muchado and Barnett worked as facility physicians." Id. Other than him being provided Tylenol and Motrin "as a panacea," Plaintiff states that his abdominal condition went "wholly ignored" for approximately five years. Id. During this five-year time period, Defendant Liberty was the contract provider at the FCCC. Id. Plaintiff

---

[1]The page numbers referenced herein are to the page of the identified document as it appears on the Court's case management electronic computer filing system.

states that "[a]t no time was [his] problem evaluated by a Liberty Behavioral Healthcare Corporation Physician nor was he referred to a specialist." Id. Despite his insistence that "something was not right," Plaintiff was told that "there was nothing wrong with him." Id.

On July 1, 2006, the GEO Group, Inc., became the contract provider for the FCCC and became "responsible for the medical, psychological, dental, clinical and security services at the FCCC." Id. On August 2, 2006, Plaintiff was examined by Defendant Dr. Lamour, and diagnosed with a tumor. Id. On September 11, 2006, Dr. Lamour "changed his mind" and diagnosed Plaintiff with a hiatal hernia. Id. Plaintiff claims that his "stomach has swollen to the point of looking similar to a pregnant female." Id. Dr. Lamour prescribed Plaintiff with Zantac and Prilosec, which did not reverse Plaintiff's condition or alleviate his suffering. Id.

On September 20, 2006, Plaintiff wrote Teion L. Wells, the Director of the Sexually Violent Predator Program at the DCF, "pleading for DCF to intervene into the situation." Id. Plaintiff received a response to his letter which caused Plaintiff to believe that "those who received copies of the responding letter would investigate the matter and follow up," but "nothing happened and [Plaintiff] continues to suffer, without receiving proper corrective treatment." Id. at 9.

On March 19, 2007, Plaintiff was summoned to the FCCC Medical Department and informed by Dr. Lamour that he "suffered from anemia" and was ordered to undergo additional blood work. Id. On March 20, 2007, Plaintiff was called to the FCCC Medical Department and met with Dr. Lamour. Id. Dr. Lamour told Plaintiff he had received "additional pleadings from the lawsuit." After discussion with Plaintiff, Dr. Lamour told him that he would schedule an "MRI for him and send him to see a specialist." Id. Dr. Lamour also prescribed Plaintiff Rantidin(Zantac); Fluoxetine (Prozac); and Prilosec at this appointment. Id. On March 21, 2007, Plaintiff received "additional lab tests." Id. On March 22, 2007, Plaintiff was given the medications prescribed by Dr. Lamour. Id.

On March 27, 2007, at 9:30 p.m., Plaintiff began vomiting and became sick. Id. Earlier in the day, Plaintiff learned that Dr. Lamour had prescribed Prozac for him. Id. Plaintiff was taken to the FCCC Medical Department, and the nurse on duty called Dr. Lamour. Id. Dr. Lamour refused to have Plaintiff transported to the hospital. Id. Plaintiff states that he was "told he will be seeing another specialist." Id. at 11. Plaintiff alleges, however, that "no treatment has been given to alleviate his problem." Id. Plaintiff surmises that he "will require corrective surgery." Id. Due to the "psychotropic drug incident, [Plaintiff] is afraid of what treatment he'll receive at [the] FCCC." Id.

Defendant Liberty seeks dismissal of Plaintiff's Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). Liberty Motion at 1. Specifically, Liberty points out that the Second Amended Complaint only identifies the corporate entity, Liberty, as a Defendant and states that it was the "former contract provider at the FCCC for DCF." Id. at 2. Consequently, Liberty argues that the Second Amended Complaint fails to "allege any causal connection between Liberty and any alleged constitutional violations." Id. In particular, Liberty argues that, although the Second Amended Complaint mentions the names of two physicians who were previously employed by Liberty, Plaintiff does not specify what actions these physicians should have taken, or failed to take, to subject Liberty to liability. Id. at 3-4. Additionally, Liberty argues that even assuming the Second Amended Complaint articulates improper conduct by an employee of Liberty, Liberty cannot be held liable under a theory of *respondeat superior*. Id. at 9. Further, Liberty points out that the Second Amended Complaint fails to allege that Liberty had an official policy or custom the caused the alleged constitutional deprivation. Id. at 8-9.

Defendant Butterworth argues that he had not been served with a copy of the Second Amended Complaint in his individual capacity and thus service has not been effectuated upon him. Butterworth Motion at 1. Nonetheless, Butterworth points out that the Second Amended Complaint fails to state a claim against him in his

individual capacity. Id.  With respect to his official capacity, Butterworth argues that Plaintiff concedes that he is receiving medical treatment but merely disagrees with the course of this treatment.  Id. at 2.

Upon review of the Second Amended Complaint, the Court agrees with Defendants Liberty and Butterworth, and finds that the Second Amended Complaint fails to articulate a claim upon which relief can be granted as to these two Defendants.

**II.**

In deciding a Rule 12(b)(6) motion to dismiss, the Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).  The Court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff. Christopher v. Harbury, 536 U.S. 403, 406 (2002); Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003). However, the Court need not accept unsupported conclusions of law or of mixed law and fact in a complaint. Marsh v. Butler County, Ala., 268 F.3d 1014, 1036 n.16 (11th Cir. 2001).

To satisfy the pleading requirements of Fed. R. Civ. P. 8, a complaint must simply give the defendant fair notice of what the plaintiff's claims are and the grounds upon which they rest. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002); Dura

Pharms., Inc. v. Broudo, 125 S. Ct. 1627, 1634 (2005). However, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." See Bell Atlantic Corp. v. Twombly, ____ U.S. _____, 127 S. Ct. 1955, 1965, 1968-69 (2007) (citations omitted) (abrogating Conley v. Gibson, 355 U.S. 41 (1957) and stating that Conley did not set forth the minimum standard governing a complaint's survival under a motion to dismiss, rather the case "described the breadth of opportunity to prove what an adequate complaint claims"). With respect to § 1983 cases that involve individuals entitled to assert qualified immunity, the Eleventh Circuit imposes "heightened pleading requirements." Passmore Swann v. Southern Health Partners, Inc., 388 F.3d 834, 837-838 (11th Cir. 2004)(citing Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163 (1993)); Laurie v. Ala. Court of Crim. Appeals, 256 F.3d 1266, 1275-76 (11th Cir. 2001). This heightened pleading standard requires a plaintiff to allege the facts supporting a § 1983 claim with some specificity. See GJR Invs. v. County of Escambia, 132 F.3d 1359, 1368 (11th Cir. 1998) (stressing "that the heightened pleading requirement is the law of this circuit"). Dismissal is warranted if, assuming the truth of the factual allegations of the plaintiff's complaint, there is a dispositive legal issue which precludes relief. Neitzke v. Williams, 490 U.S. 319, 326 (1989); Brown v. Crawford County, Ga., 960 F.2d 1002, 1009-10 (11th Cir.

1992). Because Plaintiff is proceeding *pro se*, his pleadings are held to a less stringent standard than pleadings drafted by an attorney and will be liberally construed. Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003) (citing Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998)).

### III.

As this is a § 1983 action, the initial inquiry must focus on the presence of two essential elements:

> (1) whether the person engaged in the conduct complained of was acting under color of state law; and (2) whether the alleged conduct deprived a person of rights, privileges or immunities guaranteed under the Constitution or laws of the United States.

Griffin v. City of Opa-Locka, 261 F.3d 1295, 1303 (11th Cir. 2001). Specifically, in order to sustain a cause of action under 42 U.S.C. § 1983, "a plaintiff must assert the violation of a federal right, not merely a violation of federal law." Gonzanga Univ. v. Doe, 536 U.S. 273, 282 (2002)(quotations omitted). In addition, plaintiff must allege and establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation. Marsh v. Butler County, Ala., 268 F.3d at 1059; Swint v. City of Wadley, Ala., 51 F.3d 988 (11th Cir. 1995); Tittle v. Jefferson County Comm'n, 10 F.3d 1535, 1541 n.1 (11th Cir. 1994).

Plaintiff, as an involuntarily civilly committed person, has "liberty interests under the due process clause of the Fourteenth Amendment to reasonably safe conditions of confinement, freedom

from unreasonable bodily restraints, and such minimally adequate training as might be required to ensure safety and freedom from restraint." Lavender v. Kearney, 206 Fed. Appx. 860, 862-63 (11th Cir. 2006)(citing Youngberg v. Romeo, 457 U.S. 307, 322 (1982)). Plaintiff's protection against cruel and inhumane treatment is at least as extensive as, if not greater than, the Eighth Amendment protections afforded prisoners. Lavender, 206 Fed. Appx. at 863; Dolihite v. Maughon by and Through Videon, 74 F.3d 1027, 1040-41 (11th Cir. 1996). Consequently, "relevant case law in the Eight Amendment context also serves to set forth the contours of the due process rights of the civilly committed." Lavender, 206 Fed. Appx. at 863 (citations omitted). Thus, for "an involuntarily civilly-committed plaintiff to establish a § 1983 violation of his due process rights, he must show that state officials were deliberately indifferent to a substantial risk to his safety." Id.[2] See also Sain v. Wood, 512 F.3d 886, 893 (7th Cir. 2008)(applying Eighth Amendment deliberate indifferent analysis to civil committed detainee in § 1983 action).

In order to state a claim for a violation under the Eighth Amendment, Plaintiff must show that public officials acted with

---

[2]Defendant Butterworth suggests that the professional judgment standard, recognized by the Eleventh Circuit in Rodgers v. Horsley, 39 F.3d 308, 311 (11th Cir. 1994), is applicable for this action. Butterworth Motion at 2. The Court does not find the application of the deliberate indifference or professional judgment standard significant for purposes of this Order, since under either standard, the Second Amended Complaint fails to articulate a claim as to Defendants Butterworth and Liberty.

deliberate indifference to Plaintiff's serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976); Farrow v. West, 320 F.3d 1235 (11th Cir. 2003). Thus, a plaintiff must first show that he had an "objectively serious medical need" of which the official was aware. Id. at 1243 (citing Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000). Next, a plaintiff must prove that the official recklessly disregarded the risk of harm; and, the officials' conduct was more than merely negligent. Farmer v. Brennan, 511 U.S. 825, 837 (1994); Farrow v. West, 320 F.3d 1235 (11th Cir. 2003); McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999).

**IV.**

Assuming Plaintiff has a serious medical need, the Court nonetheless finds that the allegations of the Second Amended Complaint are insufficient to establish a plausibile "entitlement to relief" against Defendants Liberty and Butterworth. Bell Atlantic Corp., v. Twombly, 127 S.Ct. 1966-67. The Second Amended Complaint neither alleges that Defendant Butterworth personally participated in the alleged constitutional deprivation, nor alleges a causal connection between any action of Butterworth and the alleged constitutional violation. Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990). Id. With respect to Defendant Liberty, the Second Amended Complaint fails to identify any Liberty supervisor or employee as a named defendant. To the extent that Plaintiff predicates liability upon Defendant Liberty as a result of any

actions or inactions by a physician who was employed by Liberty, the claim fails because § 1983 claims predicated on *respondeat superior* theories have been uniformly rejected. <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 690-692, (1978); <u>LaMarca v. Turner</u>, 995 F.2d 1526, 1538 (11th Cir. 1993), <u>cert. denied</u>, 510 U.S. 1164 (1994). Further, Plaintiff's Second Amended Complaint does not contain any allegations of a policy, custom or practice on the part of Liberty or DCF that was the "moving force" behind any alleged misconduct. <u>Board of the County Comm'rs v. Brown</u>, 117 S. Ct. 1382, 1388 (1997); <u>see also</u> <u>Davis ex rel. Doe v. DeKalb County Sch. Dist.</u>, 233 F.3d 1367, 1375-76 (11th Cir. 2000). Thus, the Court finds Plaintiff's Second Amended Complaint fails to state a constitutional claim against Defendant Liberty or against Defendant Butterworth, in either his individual or official capacity. Consequently, the Court will grant Defendants' respective Motions.

Accordingly, it is hereby

**ORDERED:**

1. Defendant Liberty Healthcare Corporation's Motion to Dismiss (Doc. #46) and Defendant Butterworth's Motion to Dismiss (Doc. #48) are **GRANTED**, and Plaintiff's Second Amended Complaint is dismissed without prejudice as to these two Defendants.

2. The Clerk of Court shall correct the caption and docket in this action to reflect the dismissal of Defendant Robert Butterworth, in both his individual and official capacity, and

Defendant Liberty Healthcare Corporation, and shall enter judgment accordingly.

    3.   The Court, by separate order, will enter a case management and scheduling order as to the remaining parties.

    **DONE AND ORDERED** in Fort Myers, Florida, on this __25th__ day of March, 2008.

                                                  */s/ John E. Steele*
                                                JOHN E. STEELE
                                                United States District Judge

SA: hmk
Copies: All Parties of Record